## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### *Greenbelt Division*

| | | |
|---|---|---|
| DONALD J. CALLENDER, et al | * | |
| Plaintiffs | * | |
| v. | * | Case No. <u>17-CV-03249 TDC</u> |
| WADE CALLENDER, et al. | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS,
### or in the alternative,
## MOTION FOR SUMMARY JUDGMENT

Defendant, Wade Callender ("Defendant" or "Wade Callender"), by and through his attorneys, Brian T. Gallagher, Michael N. Russo, Jr. and Council, Baradel, Kosmerl & Nolan, P.A., hereby submits the instant Memorandum in Support of Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

### INTRODUCTION

Plaintiff Donald J. Callender ("DJC") is the father of Wade Callender. Erica Callender is Wade Callender's wife and DJC's daughter-in-law. Convergence Management Associates, LLC ("CMA") is the business entity that DJC formed in 2001 and subsequently assigned to an entity known as the Falkirk Family Limited Partnership ("Partnership") in 2007. DJC's family—Wade, Christian and Diane Callender—collectively own 98.5% of the Partnership to which DJC assigned CMA; DJC's ownership interest totals less than 1% (i.e., .1345%).

In 2016, the Partnership underwent a management change in which DJC was stripped of any and all management authority (in both CMA and the Partnership). To be clear, the

management of CMA did not consent to the filing of this lawsuit, and hereby seeks to formally discontinue its prosecution.

This is not the first time that DJC has attempted to use this Court in furtherance of his family grievances. The Court may recall that, in 2015, DJC filed a lawsuit against Erica Callender ("Prior Lawsuit").[1] The Prior Lawsuit was heard by this Court and dismissed with prejudice in February of 2017. The latest Complaint revisits many of the Prior Lawsuit's arguments and issues: DJC's lack of standing to assert claims held by business entities, the alleged intrusion into CMA offices, the Partnership's control over CMA, etc. Just as before, the instant lawsuit is misplaced and should be dismissed with prejudice.

As discussed below, the entirety of the Complaint violates the basic tenet that a complaining party must possess the requisite legal authority and standing. The Plaintiffs in this action have neither legal authority nor standing. It is undisputed that DJC previously assigned CMA's ownership to the Partnership. As well established, the Partnership subsequently changed management in November of 2016, following a recorded vote exceeding 98% of the Partnership interests. Thereafter, the Partnership's new management formally decided against the continued pursuit of the Prior Lawsuit.

The instant Complaint was filed by an attorney with authority to do so because John Carpenter was terminated by the Partnership more than a year ago. As the owner of both plaintiffs named in the Prior Lawsuit (CMA and Convergex Caribbean Ltd.), the Partnership informed John Carpenter ("Attorney Carpenter") in November 2016 of its decision to dismiss its claims and instructed Attorney Carpenter to withdraw his appearance. When Attorney Carpenter failed to abide its instructions, CMA was forced to appoint new counsel and proceed with such dismissal

---

[1] The previous case was captioned *Convergence Management Associates, LLC, et al. v. Erica Callender*, case number TDC-15-4015.

of the Prior Lawsuit. Without any opposition from the current Plaintiffs—DJC, CMA, and Attorney Carpenter—the dismissal was granted by this Court in February 2017, with prejudice, and was never appealed.

Contrary to their pleading, neither the Plaintiffs nor Attorney Carpenter possess any authority to prosecute the instant lawsuit. As evidenced by the Partnership's formal meeting minutes, CMA's lawsuit in this case is completely unsanctioned by the same Partnership possessing exclusive authority over such claims; CMA is a subordinate entity lacking any such authority. As such, this action should be dismissed pursuant to Federal Rule of Civil Procedure 9(a), by which the Partnership may assert the Plaintiffs' lack of authority as an affirmative defense. DJC similarly lacks standing to assert the allegations contained in the Complaint because—by the Complaint's own admissions—the alleged injuries, if any, were suffered only by CMA, not DJC individually.

The entire Complaint is nothing more than an assortment of false and misleading allegations designed with one purpose: to hurt and damage Wade and Erica Callender from afar. Because the claim are devoid of legal merit, this Court should dismiss the claims, and/or grant judgment in favor of Defendants. Because the claims are fueled by bad faith, it is requested that the Court also enter an order assessing counsel fees in Defendants' favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

CMA is a limited liability company that was registered with the State of Maryland in 2001. Exhibit (Ex.) 1, Articles of Organization, dated October 9, 2001. In 2007, DJC employed attorney James P. Seidel ("Attorney Seidl") to orchestrate an "asset protection" strategy by which all of DJC's property—including CMA—was transferred into the Partnership. See Ex. 2, November 3, 2016 hearing transcript in case of *Callender v. Callender*, Calvert County Circuit Court case

number C-14-1314 ("Hearing Transcript") at 25:21-22; Ex. 3, Second Schedule A, Schedule of Contributed Property to the Partnership; Ex. 4, Assignment of Interest Convergence Management Associates, LLC, dated April 13, 2007.

DJC stated that the Partnership was formed and implemented to "protect certain assets" against litigation involving DJC. Ex. 5, Deposition of DJC in Calvert County Circuit Court case number C-14-1314 ("Divorce Case") at 201:14-15. Relevant to the matter before this Court, CMA was assigned to the Partnership by way of DJC's own notarized Assignment of Interest Convergence Management Associates, LLC, dated April 13, 2007. Exhibit 4, Assignment of Interest. DJC's assignment of CMA to the Partnership was notarized by Attorney Seidl. *See id.*

On October 14, 2014, Diane Callender filed for divorce from DJC in Calvert County Circuit Court case number 04-C-14-001314 (the "Divorce Case"), after which DJC and Attorney Carpenter instigated their first litigation against DJC's estranged family. On December 31, 2015, DJC filed the Prior Lawsuit against Erica Callender and the Bank of the Bahamas in this Court in case number 15-CV-04015 TDC ("Prior Lawsuit"). By way of Memorandum Opinion in the Prior Lawsuit, dated June 30, 2016, this Court held that DJC lacked the requisite standing to assert claims on behalf of CMA and Convergex Caribbean Ltd. Memorandum Opinion, Docket Entry ("DE") #40, *Convergence Management Associates, LLC, et al. v. Erica Callender*, No. 15-CV-04015-TDC (D. Md. February 21, 2017). In response to the Court's rejection of his individual standing, DJC—by and through Attorney Carpenter—amended the Prior Lawsuit to remove DJC as plaintiff and install CMA and Convergex Caribbean Ltd. - Partnership entities – as plaintiff in place of DJC's. Order, DE #41, *Callender*, No. 15-CV-04015-TDC (D. Md. February 21, 2017); Amended Complaint, #43, *Callender*, No. 15-CV-04015-TDC (D. Md. February 21, 2017).

On November 3, 2016, DJC and Diane Callender appeared before the Honorable Judge Gregory Wells in the Divorce Case. Ex. 2, Hearing Transcript. The hearing, conducted in the Circuit Court for Calvert County, Maryland, was intended to address the parties' property claims. *Id* at 3-4. At the outset of this hearing, counsel for DJC advanced DJC's position that no marital assets existed for Diane Callender's benefit because all property owned by the parties was previously assigned to the Partnership and was, therefore, Partnership property. *Id* at 4:16-5:11.

In an effort to discern DJC's own invocation of Partnership domain, the Court received the testimony of Attorney Seidel, the attorney who drafted the relevant documents. *Id* at 11:24-12:3. Attorney Seidl confirmed that the entity known as CMA was 100% Partnership-owned as a result of DJC's notarized Assignment of Interest. *Id* at 40:23-41:1. Attorney Seidl further testified that, per the language of the governing documents, 85% of the Partnership controlled the Partnership's processes and decision-making. *Id*.

The 85% threshold confirmed by Attorney Seidl proved significant, as the Partnership is owned primarily by DJC's 2 sons, not DJC. Under the Partnership terms executed by DJC and his family, the Partnership is specifically owned as follows:

    -Christian Callender-owns 48.516%;
    -Wade Callender owns 48.516%;
    -Diane Callender owns 1.48%;
    -CMA owns 1.345%;
    -DJC owns .1345%;

Ex. 6, Partnership Agreement at Second Schedule B Schedule of Interests in the Partnership.

Attorney Seidl acknowledged the danger for DJC under such an arrangement, stating "this is why I tell parents be careful about gifting more than 85 percent to your kids, because they can have a coup 'etat and out you go." Ex. 2, Hearing Transcript at 66: 18-20.

At a break in the aforementioned hearing, a 98% Partnership vote was conducted that removed CMA and DJC's management authority. Ex. 2, Hearing Transcript at 103:2-10; Ex. 7, Partnership Meeting Minutes, dated November 3, 2016; Ex. 8, Partnership Meeting Minutes, dated December 2016. With DJC in attendance, the Partnership's vote was recited in Court before Judge Wells, under oath, without any objection from DJC or his counsel, who were present. Ex. 2, Hearing Transcript at 102-104:20. As part of the November 2016 vote, the Partnership bestowed upon Wade Callender, Esq. sole decision making authority concerning litigation. Ex. 7, Meeting Minutes, dated November 3, 2016.

As part of its change in management, the Partnership elected to remove any and all Partnership assets from the possession and control of DJC and/or CMA. Ex.8, Partnership Meeting Minutes, December 2016. In furtherance of its votes and authority, the Partnership immediately contacted Attorney Carpenter to inform him of the Partnership's decisions. To this end, Attorney Carpenter was specifically advised that the claims he filed against Erica Callender were fundamentally malicious and untrue, and the Partnership wanted them withdrawn immediately. Ex. 9, Text Exchange between John Carpenter and Wade Callender; Ex. 10, Affidavit of Wade Callender, dated January 18, 2018.

When Attorney Carpenter indicated his unwillingness to abide the Partnership's instructions, Attorney Carpenter was formally terminated and instructed to return all Partnership-related materials and funds to the Partnership. *Id.* Among the documentation that Wade Callender <u>did</u> in fact provide to Attorney Carpenter was a November 3, 2016 letter from attorney Sam Brown to Attorney Carpenter explaining that 98% of the ownership of Partnership has voted to remove DJC "as the general partner of the Family Trust and also of anything regarding Convergence." Ex. 9, Text Exchange between John Carpenter and Wade Callender. This letter further informed

Attorney Carpenter that the Partnership had selected Wade Callender to manage litigation matters regarding CMA and the Partnership. *See id*. Attorney Carpenter was further advised that DJC lacked any authority regarding CMA or the Partnership's affairs following the Partnership's vote November 2016 vote. These texts—which were invoked within the Complaint itself—directly contradict the assertion to this Court that Attorney Carpenter was not "ever provided" with such documentation.

On November 23, 2016, CMA and Convergex Caribbean Ltd. – through Attorney Carpenter – filed a motion in the Prior Lawsuit entitled "PLAINTIFFS' MOTION SEEKING AN ORDER FROM THE COURT COMPELLING DEFENDANT TO ESTABLISH THAT HER HUSBAND, THROUGH A FAMILY LIMITED PARTNERSHIP, CONTROLS CONVERGENCE MANAGEMENT ASSOCIATES, AS REPRESENTED BY HER COUNSEL AND FURTHER SEEKING AN ORDER ALLOWING PLAINTIFFS TO DEPOSIT SETTLEMENT PROCEEDS EARLIER OBTAINED WITH THE COURT AND ANY FURTHER RELIEF THE COURT DEEMS APPROPRIATE UNDER THE CIRCUMSTANCES" ("Motion for Relief"). Motion for Relief, DE #54, *Callender*, No. 15-CV-04015-TDC (D. Md. February 21, 2017). The Motion for Relief sought an order of the court requiring either Erica Callender to "establish that her husband [Wade Callender] is now in control over Convergence Management Associates…or in the alternative, Wade Callender a licensed attorney, be order to appear or in some manner establish that he now controls the plaintiff company Convergence Management Associates." Id at ¶25. The Motion for Relief attached, as exhibits, the November 3, 2016 Divorce Case Hearing Transcript and a November 21, 2016 letter from attorney Bruce Marcus informing Attorney Carpenter that he did not have the authority to represent CMA or Convergex Caribbean Ltd – both Partnership assets – any further. *Id*. The Motion for

Relief further requested an order of the Court ordering allowing CMA to deposit a previously received settlement into the Court. *See id.* The Court denied this Motion for Relief by way of Order, dated January 13, 2017. Order, DE #67, *Callender*, No. 15-CV-04015-TDC (D. Md. February 21, 2017).

On February 8, 2017, a Stipulation of Dismissal with Prejudice was filed in the Prior Lawsuit. Stipulation of Dismissal with Prejudice, DE #74, *Callender*, No. 15-CV-04015-TDC (D. Md. February 21, 2017). On February 21, 2017, and without any opposition filed by any party, the Honorable Theodore D. Chuang entered an Order dismissing the Prior Lawsuit with prejudice. Order, DE #75, *Callender*, 15-CV-04015-TDC (D. Md. February 21, 2017). At no time did DJC or Attorney Carpenter make any objection or note any appeal regarding such dismissal.

On May 4, 2017, DJC swore out a criminal complaint against multiple family members relating to the Partnership's alleged intrusion into CMA's offices. The Assistant State's Attorney dropped all charges against everyone named by DJC, without the need for any court appearance.

**ARGUMENT**

**1. Standard of Review**

**a. MOTION TO DISMISS**

A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotations omitted). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *See Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A court considering a motion to dismiss must construe "all well pled facts as true" and "in the light most favorable to the plaintiff." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions,

elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd*., 591 F.3d at 255 (citing Ashcroft, 129 S.Ct. at 1949.)  Therefore, "the complaint's factual allegations must produce an inference of liability strong enough to nudge the plaintiff's claims "across the line from conceivable to plausible." *Ashcroft*, at 1952 (*quoting Bell Atl. Corp*., 550 U.S. at 570).

### b.  MOTION FOR SUMMARY JUDGMENT

Rule 12(d) provides that if "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." The question to be resolved in ruling on a motion for summary judgment is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

A court considering a motion for summary judgment must view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir.2008). If a motion for summary judgment is sufficiently supported, the nonmoving party must demonstrate that there are genuine issues of material fact. *Emmett*, 532 F.3d at 297.  "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of his case." *Thompson v. Potomac Elec. Power Co*., 312 F.3d 645, 649 (4th Cir. 2002) (internal quotation marks and citation omitted).

### 2.  The Partnership is a valid entity.

Plaintiffs devote a considerable amount of their argument to the notion that the Partnership was a forfeited entity and, therefore, any action taken by the Partnership was null and void.  Putting aside the dereliction that forfeiture would signify against DJC (i.e., as the general partner entrusted

to maintain such filings prior to his removal), the Plaintiffs' allegations fail in the face of basic law and fact.  The Partnership was created as a Virginia limited partnership on April 25, 2007.  Ex. 11, Virginia SCC information report.  While under DJC's control, the State of Virginia temporarily forfeited the Partnership's registration following DJC's failure to pay the required registration fees.  DJC's failure was swiftly cured by the Partnership's new management with retroactive effect.

The Partnership was subsequently—and validly—reinstated, as evidenced by way of Certificate of Fact issued on March 2, 2017.  See Ex. 12, Certificate of Fact, dated March 2, 2017.  And, under Va. Code Ann. § 50-73.52:7: "[U]pon entry of the order [of reinstatement], the existence of the limited partnership shall be deemed to have continued from the date of the cancellation <u>as if cancellation had never occurred</u>, and any liability incurred by the limited partnership or a partner or other agent after the cancellation and before the reinstatement is determined <u>as if cancellation of the limited partnership's existence had never occurred</u>." (Emphasis added.)  As a legal matter, the Partnership never ceased to be valid or in good standing.

### 3. DJC and CMA lack the authority to assert or maintain this action against the Partnership's stated wishes.

Fed. R. Civ. P. 9(a) holds that a party may raise a party's authority to sue or be sued in a representative capacity as a defense to a lawsuit.  Accordingly, this lawsuit should be dismissed because both Plaintiffs, DJC and CMA, lack the legal authority to bring this action against the Defendants.  As demonstrated herein—and as DJC himself previously argued in the Divorce Case—CMA is wholly owned by the Partnership via DJC's own, notarized Assignment of Interest.  See Ex. 4, Assignment of Interest.  The Partnership's ownership and control over CMA and its affairs was formally explained on the record, under oath, and without any objection more than a year ago.  Ex. 2, Hearing Transcript at 40:23-41:1.  The text messages shown in Exhibit 11 demonstrates that the change in management of the Partnership—and therefore CMA—was

communicated, at length and repeatedly, to Attorney Carpenter.  The instructions provided in each of these communications were explicit; the instruction to Attorney Carpenter that he was not authorized to represent CMA was plain, yet he refuses to comply.

The positions of the Partnership and CMA regarding this latest lawsuit are also explained, in depth, within the Partnership's recent January 2018 Meeting minutes.  Ex. 13, Partnership Meeting Minutes, January 12, 2018.  These minutes leave no doubt that DJC, CMA and Attorney Carpenter are 1) acting without <u>any</u> authority to prosecute the instant lawsuit; and 2) that the unsanctioned, meritless effort represented by the instant lawsuit should be dismissed immediately.  *Id*.  Indeed, the most disturbing part of the instant lawsuit may be that it was filed in the face of such unambiguous confirmation that neither DJC, CMA, nor Attorney Carpenter possess any authority to act on behalf of—or represent—the Partnership or CMA.

Multiple authorities previously informed Attorney Carpenter that he lacks the authority to represent CMA.  Wade Callender, the partner validly selected by the Partnership to direct litigation, repeatedly requested that Attorney Carpenter refrain from taking <u>any</u> further action on behalf of CMA.  Furthermore—and most confounding—is that DJC and Attorney Carpenter are in possession of the transcript for the November 3, 2016 hearing in the Divorce Case.  After all, it was Attorney Carpenter who attached a copy of the transcript to the Motion for Relief in the Prior Lawsuit.  *See* Motion for Relief, DE #54, *Callender*, No. 15-CV-04015-TDC (D. Md. February 21, 2017).  This transcript confirms that evidence was formally received from James Seidl, the attorney who 1) drafted the Partnership documents; and 2) notarized DJC's <u>own</u> assignment of CMA to Partnership.  It was this very attorney who testified that CMA was wholly owned by the Partnership and controlled <u>not</u> by DJC's paltry .1345%, but by those family members possessing

more than 85% ownership.  And all of this was known in February 2017, when no objection—or appeal—was raised by those who now wish to object.

The November 2016 transcript ultimately demonstrates that the 85% threshold was exceeded by a recorded vote of more than 98% of the Partnership stripping DJC's authority to file the instant claims.  Given the explicitness with which DJC's authority was stripped—and successfully wielded by those who stripped it in February 2017—it is concerning that those who never formally opposed the changeover in either court have, nonetheless, filed another lawsuit. Because it is clear that DJC and CMA lack the requisite authority to prosecute this matter, it should be dismissed immediately in accordance with Fed. R. Civ. P. 9(a).

**4.  DJC lacks standing.**

**a.  Counts I, II, and IV.**

Counts I and II allege theft and trespass, respectively, while Count IV alleges tortious interference with business relationships.  *See generally*, Complaint.  Yet the Complaint fails to assert a cognizable claim.  The Complaint does not even attempt to articulate which Plaintiff—DJC or CMA—is bringing which particular Counts against which particular Defendants.  Here again, to the extent that DJC is individually asserting theft, trespass, and interference, he cannot do so because—in addition to every other deficiency—DJC fundamentally lacks the standing to prosecute such Counts.

According to the Complaint, Wade Callender is being sued because he allegedly "removed and took into his possession various items located at the business office of CMA."  Complaint at ¶18 (Emphasis added.)  Because CMA would be the (allegedly) aggrieved business party under this fact pattern, and because the alleged culprit would be a CMA partner acting in his partner capacity, there is no cause of action whatsoever by DJC individually (or CMA against its duly-

authorized, fellow partner). This truism is reflected in the January 2018 Meeting minutes of the Partnership itself, in which the Partnership unequivocally declares the meritless nature of the instant lawsuit. Ex. 13, Partnership Meeting Minutes, dated January 11, 2018.

Not only does the Complaint fail to suggest that Wade Callender acted contrary to Partnership instructions, rules or wishes, the exact <u>opposite</u> is true: the Complaint stipulates that every act would have been in accordance with the stated wishes of more than 98% of the Partnership's interests. Even if everyone assumed, *arguendo*, that an agent of the Partnership recovered relevant books and accounts located at the Partnership's registered office spaces—as defined by the Maryland State Department of Assessments and Taxation—the recapture of such items is not actionable by DJC (a .1345% interest holder without legal authority) or CMA (a 1.345% interest holder without legal authority) against a controlling authority that recaptures its own property. There is no cognizable basis by which the actions of a governing Partnership can be legally defined as theft, trespass and/or interference against another partner by a subordinate partner. In fact, the very language of the Complaint concedes that the Partnership's chosen agent would have been acting pursuant to Partnership votes and instructions regarding its own property.

Maryland Courts have rejected the Complaint's concept that an individual of a limited liability company ("LLC") somehow has standing to bring lawsuits for damages allegedly suffered by the LLC. *Waller v. Waller*, 187 Md. 185, 49 A.2d 449, 452 (1946) held that "[T]he cause of action for injury to the property of a corporation or for impairment or destruction of its business is in the corporation, and such an injury, although it may diminish the value of the capital stock, is not primarily or necessarily a damage to the stockholder, and hence the stockholder's derivative right can be asserted only through the corporation". This holding was further exemplified by the Fourth Circuit in *Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 349 (4th Cir. 2013), which

held that Principals of a restaurant business did not have standing to bring claims against a landlord under Maryland law for tortious interference with contract and with economic relationships; such injuries, if any, derived entirely from the injury their company allegedly sustained.  There simply is no basis for the individual claims offered by the Complaint against these Defendants.

### b.  Count V.

To the extent that DJC alleges Abuse of Process, a persistent lack of standing bars DJC from asserting this claim as well.  It is indisputable that DJC withdrew himself as a plaintiff in the Prior Lawsuit by the filing of the Amended Complaint.  Amended Complaint, #43, *Callender*, No. 15-CV-04015-TDC (D. Md. February 21, 2017).  As a matter of law, DJC cannot assert injury from the dismissal of a case to which he did not belong.  For this reason, this Court should summarily dismiss Count V of the Complaint as well.

### 5.  Count III – Intentional Infliction of Emotional Distress

This count should also be dismissed as a matter of course.  First, Plaintiffs fail to state a claim upon which relief can be granted.  Second, for all of the reasons that DJC and CMA lack standing to assert the claims of theft, trespass and interference, they also lack standing to assert a claim of intentional infliction of emotional distress.

Under Maryland law, a prima facie case for intentional infliction of emotional distress requires more than a generalized invocation; it requires (1) specific conduct that is intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and specific emotional distress; and (4) the emotional distress must be severe.  *See* Harris v. Jones, 281 Md. 560, 566, 380 A.2d 611, 614 (1977).  Plaintiffs failed to demonstrate any of the aforementioned elements, let alone all of them.

As this Court knows, "legal conclusions, elements of a cause of action, and bare assertions <u>devoid of further factual enhancement</u> fail to constitute well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd*., 591 F.3d at 255 (citing *Ashcroft*, 129 S.Ct. at 1949.) (Emphasis added.) In spite of these pleading requirements, the Plaintiffs instead brought a Complaint containing <u>only</u> bare assertions devoid of further factual enhancement.

It goes without saying that the act of which Plaintiffs complain (i.e., an authorized partner visiting its own registered offices), even if true, cannot be legally construed as reckless, extreme or outrageous. To the contrary, the Hearing Transcript confirms why such efforts would be perfectly sensible following the exigent removal of a former general partner. As Attorney Seidl outlined in court, without any objection by DJC or his counsel:

> "That's the whole point, to be able to keep this whole thing running…when you've got a bad actor and we want to get him out and we want to carry on because we have to pay a bill tomorrow or we got to deal with some issue tomorrow and we can't wait until this thing gets resolved."

Ex. 2, Hearing Transcript at 25:21-22.

It suffices to say that the management of a Partnership requires Partnership materials to "keep [it] running." The only people suggesting otherwise are these Plaintiffs, who don't even have the requisite authority to make claims and have shown nothing in violation of the Partnership's rules, let alone extreme and outrageous conduct in violation of Maryland law. The Count is nothing more than another vague allegation meant to harass and annoy DJC's estranged family.

Here again, the law expressly rejects the Plaintiffs' superficial approach. *See* Hamilton v. Ford Motor Co., 66 Md. App. 46, 502 A.2d 1057, 1064 (1986) (holding that, to be successful in a suit for intentional infliction of emotional distress, the emotional stress must "completely violate

human dignity").   The notion that DJC has somehow suffered—or adequately pled—a complete violation of human dignity is both factually and legally unstainable.

## 5.  Judicial Estoppel

The Plaintiffs' claims are also precluded by judicial estoppel, the principle under which a party is precluded from advancing inconsistent positions in the trial of their causes.  *Roane v. Washington Cty. Hosp*., 137 Md. App. 582, 592, 769 A.2d 263, 269 (2001).  Elaborating on this doctrine, the Court of Appeals stated:

> "If parties in court were permitted to assume inconsistent positions in the trial of their causes, the usefulness of courts of justice would in most cases be paralyzed; the coercive process of law, available only between those who consented to its exercise, could be set at naught at all.... It may accordingly be laid down as a broad proposition that one who, without mistake induced by the opposite party, has taken a particular position deliberately in the course of litigation, must act consistently with it; one cannot play fast and loose."

*WinMark Ltd. Partnership v. Miles & Stockbridge*, 345 Md. 614, 620, 693 A.2d 824 (1997)(*quoting Kramer v. Globe Brewing Co*., 175 Md. 461, 469, 2 A.2d 634 (1938)).

The gravamen of a judicial estoppel claim is one party's inconsistency to the prejudice of his or her opponent's case. *Wilson v. Stanbury*, 118 Md.App. 209, 215, 702 A.2d 436 (1997).  There can be no doubt that the Plaintiff's Complaint asserts inconsistencies to the prejudice of its opposing parties.  No one disputes that the November 3, 2016 hearing before Judge Wells in the Divorce Case was intended to resolve relevant property issues.  At the outset of the hearing, DJC took the position that nothing existed for distribution to his opponent, Diane Callender, because all the property (including CMA), belonged to the Partnership.  After conceding the Partnership's existence and authority in one tribunal, DJC now hopes to reverse course by challenging the

Partnership's existence and authority in this tribunal. This duplicitous tactic is precisely what judicial estoppel prohibits.

When it suited DJC's interests to invoke the Partnership to disavow the existence of marital property in state court, he did so. After all, when DJC entered that courtroom 2 things had not yet occurred: 1) formal confirmation of DJC's inability to prevent the directives of those possessing 85% of the Partnership to which DJC had assigned everything; and 2) the critical vote in open court by which the Partnership stripped DJC—and CMA—of all authority. This legitimacy of the Partnership and its vote—a vote recounted under oath before all partners and without any objection—is not subject to any rightful challenge by the party who previously invoked it.

The doctrine of judicial estoppel prohibits DJC's effort to shed his prior positions in favor of arguments he previously refuted. The Court has an obligation to protect the parties from the prejudice attendant to DJC's convenient assertion of contradictory positions. It is against reason, fair play and justice that DJC has even asserted such contradictory—and inflammatory—positions before so many tribunals and parties. This type of misbehavior is unjust and specifically precluded by the doctrine of judicial estoppel.

## 6. Count V – Abuse of Process

### a. Res judicata

Plaintiffs' Abuse of Process claim cannot proceed because it is also barred by the doctrine of res judicata. The doctrine of res judicata "bars a party from relitigating a claim that was decided or could have been decided in an original suit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 161 (4th Cir.2008). Generally, the requirements of res judicata—or claim preclusion—are (1) that the parties in the present litigation be the same or in privity with the parties to the earlier dispute, (2) that the claim presented in the current action be identical to the one determined in the

prior adjudication, and (3) that there be a valid final judgment on the merits. 50 C.J.S. Judgments § 932, citing *Esslinger v. Baltimore City*, 95 Md. App. 607, 622 A.2d 774 (1993). Dismissals with prejudice—the very type of dismissal previously entered by this Court in February 2017—are treated as final judgments on the merits for purposes of res judicata. *Jacobs v. Venali, Inc.,* 596 F.Supp.2d 906, 913 (D.Md.2009). ("[W]hen entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact."). *Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000).

And yet, those who took no opposing action to dismissal now say the dismissal constitutes an actionable claim. But any such claim by CMA is barred by res judicata because it necessarily arises out of the actions taken—and dismissed with prejudice—in the Prior Lawsuit. The Stipulation of Dismissal with Prejudice was filed with the Court on February 8, 2017, to which there was no response or opposition by CMA. On February 21, 2017, this Court dismissed the Prior Lawsuit *with prejudice.* Once again, there was no response or appeal to the Order of dismissal.

If any of the Plaintiffs and Attorney Carpenter disagreed with the Stipulated Dismissal— or the authority on which it was based—they all enjoyed ample opportunity to object or notice an appeal at that time. After all, the Complaint leaves no doubt that everyone knew the alleged acts of November 2016 in February 2017, when nothing was raised by Plaintiffs (despite every opportunity to do so). The Plaintiffs' inaction at a material time is not attributable to any other party or distant family members, nor is it actionable as pled.

Every argument about the Partnership's authority to control litigation involving DJC and CMA could have—and should have—been raised at that time, when everything at issue was

familiar and ripe for action before the Court.  No such arguments were raised to known issues that, to date, have been formally closed for almost an entire year.  As such, this Count remains barred and should be dismissed on grounds of res judicata.

### b.  Collateral Estoppel

The Plaintiffs' claims are barred by the doctrine of collateral estoppel.  The bar imposed by collateral estoppel arises where there is an identity of subject matter and identity of parties in prior litigation concluded on its merits in a court of competent jurisdiction.  13 M.L.E. Judgments § 106.  In order for the doctrine of collateral estoppel to be applicable, the proponent must satisfy the following four elements:

> 1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
> 2. Was there a final judgment on the merits?
> 3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
> 4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Washington Suburban Sanitary Commission v. TKU Associates*, 281 Md. 1, 18–19, 376 A.2d 505, 514 (1977),

Each of the aforementioned elements is satisfied in support of the Defendants here.  As discussed above, the very same issues that Plaintiffs attempt to litigate here were also present during the course of the Prior Lawsuit, in which plaintiffs filed their Motion for Relief (outlining Wade Callender's alleged intrusion into the CMA offices and control over CMA, etc.).  This Motion for Relief was denied.  Thereafter, a Stipulation of Dismissal with Prejudice was filed, without any opposition from the plaintiffs.  In turn, the Court entered its Order of dismissal with prejudice to which there was, again, no opposition or appeal.

Second, there was final judgment on the merits.  As cited above, dismissals with prejudice, are considered judgments on the merits.  *Jacobs*, 596 F.Supp.2d at 913.

Third, the Complaint concedes that the parties in this lawsuit are the same, familiar parties as those in the Prior Lawsuit; without such a link, the Plaintiffs presumably wouldn't be trying to lodge their "abuse of process claim." Regardless, it is a matter of record that DJC was an original plaintiff in the Prior Lawsuit who later substituted CMA and Convergex Caribbean Ltd. Such privity satisfies the third element of collateral estoppel.

Lastly, the Plaintiffs in this lawsuit had every opportunity to object to the dismissal in the Prior Lawsuit. DJC cannot claim prior ignorance or incapacity, as it was DJC who insinuated CMA and Convergex Caribbean Ltd. into the Prior Lawsuit. Despite every fair opportunity to do so between November 2016, February 2017, and many months thereafter, there was absolutely no judicial action taken by those against whom pleas had been asserted.

This Court also deserves to know that, around the same time that DJC was foregoing any opposition or appeal of the Court's February 2017, DJC and his counsel were raising the alleged unlawful intrusion into CMA's offices in another court—namely, a contempt hearing against DJC in the Divorce Case that occurred in March 2017. There, DJC demonstrated his enjoyment of a fair opportunity to be heard in <u>multiple</u> courts on this very same topic of alleged intrusions by his fellow partners into CMA, theft, burglary, etc. The Divorce Case roundly ignored DJC's notions, finding instead that DJC was in contempt and likely engaged in a "shell game" regarding his assets. This Order is attached as Ex. 14, Order, *Callender v. Callender*, C-14-1314 (Cir. Ct. Calvert County).

The available evidence portrays a man that simply cannot accept the authority of any Court. On multiple occasions, courts have passed judgment against these Plaintiffs; they persist undeterred, and in spite of the facts and law. This Court should not allow these Plaintiffs to continually disrupt people's lives with frivolous and previously adjudicated matters.

**Conclusion**

Neither DJC nor CMA have the authority or standing to bring the instant claims. It was DJC himself who executed the Assignment of Interest that made CMA a wholly owned subsidiary of the Partnership. When 98% of the Partnership held a lawful vote to oust CMA and DJC from its management authority, it was done in accordance with rules and procedures that DJC approved, and without any objection by DJC or his counsel. Without the management authority of which they were properly stripped, neither DJC, CMA, nor Attorney Carpenter possess the power or authority to prosecute the Complaint's unfounded, improper claims.

The instant lawsuit is nothing more than an attempt by Plaintiffs to (again) annoy and harass Wade and Erica Callender because they supported Diane Callender in her divorce from DJC. It goes without saying that this Court should not be bothered with the petty grievances of an embittered patriarch. Because every one of the counts and allegations is either factually inaccurate, legally hollow—or both—this Court should swiftly dismiss this action, with prejudice.

Respectfully submitted,

COUNCIL, BARADEL,
KOSMERL & NOLAN, P.A.

*/s/ Brian T. Gallagher*
Brian T. Gallagher
Michael N. Russo, Jr.
125 West Street, Fourth Floor
P.O. Box 2289
Annapolis, Maryland 21404
Telephone: (410) 268-6600
Facsimile: (410) 269-8409
Gallagher@CouncilBaradel.com

*Attorney for Defendant*

## **Certificate of Service**

I hereby certify that on January 19, 2018, a copy of the foregoing was served on the

following parties by way of the Court e-filing.

John Carpenter
910 17th Street, NW, Suite 800
Washington, DC 20006

*/s/ Brian T. Gallagher*
Brian T. Gallagher