UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

DONALD J. CALLENDER,

    Plaintiff,

v.

WADE CALLENDER,

    Defendant.

Civil Action No. TDC-17-3249

## MEMORANDUM OPINION

Plaintiffs Donald J. Callender and Convergence Management Associates, LLC ("CMA") filed this tort action against Defendant Wade Callender, who in turn filed several counterclaims against both Plaintiffs. Pending before the Court is Wade Callender's Motion for Attorney's Fees and Costs and Donald Callender's Cross Motion for Sanctions Including Attorney's Fees, both of which are fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, both Motions will be DENIED.

## BACKGROUND

Background on this litigation is set forth in extensive detail in this Court's three previous opinions in this case, which are incorporated herein by reference. *See Callender v. Callender*, No. TDC-17-3249, 2018 WL 3609536, at *1-4 (D. Md. July 26, 2018) ("*Callender I*"); *Callender v. Callender*, No. TDC-17-3249, 2019 WL 1980700, at *1 (D. Md. May 3, 2019) ("*Callender II*"); *Callender v. Callender*, No. TDC-17-3249, 2020 WL 1083162, at *1-3 (D. Md. Mar. 6, 2020) ("*Callender III*").

This case is part of a series of protracted disputes between family members who were also partners in the Falkirk Family Limited Partnership ("Falkirk"), which was formed under Virginia law on April 13, 2007. As initially constituted, pursuant to the Limited Partnership Agreement of Falkirk (the "Partnership Agreement"), Falkirk had four limited partners—Donald Callender; his wife, Diane Callender; and their two sons, Christian and Wade Callender. Falkirk had one General Partner—Donald Callender, in his capacity as president of CMA. In 2014, Diane Callender filed for divorce from Donald Callender in the Circuit Court for Calvert County, Maryland. While the divorce proceedings were ongoing, Donald Callender filed suit in this Court against Erica Callender, Wade Callender's wife, claiming that she fraudulently withdrew funds from the bank account of a business affiliated with CMA. *See* Compl. ¶¶ 24-28, ECF No. 1, *Callender v. Callender*, No. TDC-15-4015 (D. Md. Dec. 31, 2015). After the Court found that Donald Callender lacked standing to bring his claims, CMA and its affiliate were substituted in as the plaintiffs. *See Callender v. Callender*, No. 15-4015, 2016 WL 3647613, at *4 (D. Md. June 30, 2016). On November 3, 2016, during the pendency of both that case and the divorce proceedings, Diane, Christian, and Wade Callender convened a meeting of Falkirk. The three individuals—who together controlled over 98 percent of Falkirk—voted to remove Donald Callender as the General Partner of Falkirk and to give Wade Callender control over litigation relating to CMA. Then, on February 8, 2017, Wade Callender had an attorney file a stipulation of dismissal with prejudice on behalf of CMA and its affiliate in the lawsuit against Erica Callender, thereby ending that case.

At the time of the vote to remove Donald Callender, CMA maintained an office in Prince Frederick, Maryland ("the CMA Office"). On November 5, 2016, Wade Callender, along with Diane Callender, Christian Callender, and several others, went to this office. Although they lacked

the means to enter the office, they brought along a locksmith. Once inside, personnel from a data retrieval company they had retained removed a computer, hard drives, and various paper files. On December 6, 2016, Diane, Christian, and Wade Callender held another meeting of Falkirk, at which they reaffirmed their decision to remove Donald Callender and memorialized certain amendments to the Partnership Agreement.

The dismissal of the lawsuit against Erica Callender and the entry into the CMA Office led Donald Callender and CMA to file the present case on November 3, 2017. The Complaint asserted claims of conversion and civil theft, trespass, intentional infliction of emotional distress, and tortious interference with business relationships against Wade Callender, and a claim of abuse of process against Wade Callender and Erica Callender. On July 16, 2018, the Court dismissed Erica Callender as a defendant; dismissed Donald Callender's abuse of process claim; dismissed the intentional infliction of emotional distress claims; and denied summary judgment to Wade Callender on the remaining claims. *Callender I*, 2018 WL 3609536, at *12. On August 9, 2018, Wade Callender filed an Answer to Plaintiffs' remaining claims and asserted counterclaims of abuse of process and defamation against Donald Callender, and of breach of the partnership agreement and false light against both Donald Callender and CMA. On May 3, 2019, the Court dismissed all of the counterclaims except the breach of the partnership agreement counterclaim. *Callender II*, 2019 WL 1980700, at *4. After discovery, Wade Callender filed a Motion for Summary Judgment, which the Court granted on March 6, 2020, resolving all of Plaintiffs' remaining claims—conversion and civil theft, trespass, tortious interference with business relationships, and abuse of process—in Wade Callender's favor. *Callender III*, 2020 WL 1083162, at *9.

The Court then directed Wade Callender to file a Notice informing the Court of whether he intended to dismiss the only remaining claim in the case, his breach of the partnership agreement counterclaim against Donald Callender and CMA. On March 18, 2020, Wade Callender filed a Notice stating that he intended to proceed with the counterclaim. Subsequently, on February 12, 2021, Wade Callender filed a Stipulation of Dismissal as to the breach of the partnership agreement counterclaim against CMA, which the Court approved. Then, on August 19, 2021, the parties filed a Stipulation of Dismissal as to the breach of the partnership agreement counterclaim against Donald Callender. The Court granted the dismissal, thereby ending the case.

## DISCUSSION

In his Motion, Wade Callender argues that he is entitled to attorney's fees and costs pursuant to a fee-shifting provision in the Partnership Agreement, which allows for the prevailing party in a dispute between partners to collect attorney's fees and costs. Donald Callender opposes the Motion on the basis that the provision does not apply to this litigation. He separately moves for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority in the form of attorney's fees and costs incurred litigating Wade Callender's breach of the partnership agreement counterclaim after the Court resolved all other claims in this case. The Court will address each Motion in turn.

**I.      Wade Callender's Motion**

In his Motion, Wade Callender seeks attorney's fees and costs as the prevailing party on the tort claims asserted by Plaintiffs in this litigation. Because the Court heard this matter pursuant to its diversity jurisdiction under 28 U.S.C. § 1332, it applies Maryland law in determining whether an attorney's fees award is warranted. *See Rishell v. Comput. Sci. Corp.*, 702 F. App'x 103, 104 n* (4th Cir. 2017) (noting that attorney's fees awards are substantive issues to which state

substantive law applies) (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 631 (4th Cir. 1999)); *Philip Morris Inc. v. Angeletti*, 752 A.2d 200, 230 (Md. 2000) (holding that Maryland applies the law of the state in which the alleged tort took place). Under Maryland law, a prevailing party is generally not awarded attorney's fees except in specific circumstances such as when there is a contract in which the parties have agreed to that effect. *Nova Rsch., Inc. v. Penske Truck Leasing Co.*, 952 A.2d 275, 281 (Md. 2008). Wade Callender argues that the Partnership Agreement contains a contractual fee-shifting provision pursuant to which he is entitled to attorney's fees and costs as the prevailing party. Section 14 of Article 14 of the Partnership Agreement as signed on April 13, 2007 is entitled "Attorneys' Fees and Costs" and provides that:

> In the event a dispute arises between any partner and the partnership or between the partners themselves, the prevailing party shall be entitled to recover reasonable attorney's fees and court costs incurred.

Partnership Agreement Art. 14 § 14, Wade Callender Mot. Ex. 1, ECF No. 142-1.

As a threshold matter, the Court notes that it is not readily apparent that the fee-shifting provision applies to the claims on which Wade Callender prevailed in this litigation. In his Complaint, Donald Callender asserted claims of conversion and civil theft, trespass, intentional infliction of emotional distress, tortious interference with business relationships, and abuse of process, all of which are tort claims that do not arise directly out of an alleged violation of the Partnership Agreement. Instead, the factual bases for these claims are the November 5, 2016 entry into the CMA Office by Wade Callender and the dismissal of the case against Erica Callender. Wade Callender notes, however, that the attorney's fee provision of the Partnership Agreement applied to any dispute between Falkirk partners, not just disputes relating to the terms of the Partnership Agreement. Nevertheless, the Court need not decide this issue. Donald Callender does not contest that the Partnership Agreement is relevant to the attorney's fees request based on

the types of claims asserted, and in any event, as discussed below, the Court finds that even assuming the Partnership Agreement applies here, Wade Callender is not entitled to attorney's fees based on the plain language of the contract.

Donald Callender argues that Section 14 is inapplicable because the first 13 sections of Article 14, entitled "Dispute Resolution Provisions," set out a mandatory dispute resolution procedure which the parties did not undertake in relation to the disputes in the present case. Specifically, the first 13 sections of Article 14 collectively require the parties to seek to resolve all disputes "without litigation" and mandate that the parties pursue formal mediation followed by "mandatory and binding arbitration" if mediation fails. *Id.* Art. 14 §§ 1, 3-9, 12. Wade Callender disputes this interpretation on the grounds that Section 14 does not explicitly condition the right to recover attorney's fees on compliance with the other provisions of Article 14.

Wade Callender's argument, however, does not account for the amendments to the Partnership Agreement adopted at the December 2016 "Annual Meeting" of Falkirk attended by Diane, Christian, and Wade Callender. Dec. 2016 Meeting Minutes at 1, Donald Callender Reply Ex. 1, ECF No. 145-1. At the meeting, the partners "memorialize[d] the partnership's amendment(s) to Article 14" by attaching a document reflecting the amended language. *Id.* at 3. The attached document stated that, as amended, Section 1 of Article 14 provided that "[t]he procedure outlined in this Article, as amended, is to be used to resolve any dispute, contest or claim" and that an "affirmative and documented 2/3 vote of partners Diane Callender, Christian Callender and Wade Callender is required, as a condition precedent," to commence any dispute resolution procedure. *Id.* at 5. It also stated that "[t]he remainder of Article 14 is subject to the above terms and must be construed to reflect and abide those terms. . . . In any contest between

the above terms and previous partnership language, the above language controls." *Id.* As particularly relevant here, the amended Section 1 also provided that:

> This sentence shall be imposed as the first sentence of every section within Article 14 and binding upon the entirety of the language that follows: **"Subject to compliance with—and satisfaction of—the terms and condition(s) precedent contained in Section 1:"**

*Id.*

The amendment took place in December 2016, prior to the filing of the present case on November 3, 2017. Indeed, Wade Callender previously relied on and attached the amendment to Article 14 as an exhibit to his Answer and Counterclaims as part of the basis for his counterclaim for breach of the partnership agreement. *See* Wade Callender Counterclaims ¶ 20, Ex. A, ECF Nos. 23, 23-1. The amended Section 14 now reads:

> Subject to compliance with—and satisfaction of—the terms and condition(s) precedent contained in Section 1: In the event a dispute arises between any partner and the partnership or between the partners themselves, the prevailing party shall be entitled to recover reasonable attorney's fees and court costs incurred.

Dec. 2016 Meeting Minutes at 5; Partnership Agreement Art. 14 § 14. Section 1, in turn, requires all disputes to undergo the procedures outlined in Article 14, including mandatory mediation and arbitration, and also requires a "documented 2/3 vote of partners Diane Callender, Christian Callender and Wade Callender" as a "condition precedent" to the "commencement of any dispute resolution procedure between or involving partners." Dec. 2016 Meeting Minutes at 5. Under principles of contract interpretation, "[w]hen the clear language of a contract is unambiguous, the court will give effect to its plain, ordinary, and usual meaning." *Sy-Lene of Washington, Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003); *accord Va. Elec. & Power Co. v. N. Va. Reg'l Park Auth.*, 618 S.E.2d 323, 326 (Va. 2005). Under the plain language of the amended Partnership Agreement in effect at the time this litigation was commenced, attorney's fees and

costs may be awarded only if the parties have first complied with all of the requirements of the amended Section 1, including undergoing the dispute resolution procedure outlined in Article 14.

Here, Wade Callender has acknowledged that "[i]t is undisputed that the ADR provisions set forth in Article 14 of the Agreement were not followed." Wade Callender Mot. at 11 n.5, ECF No. 142. He neither claims nor provides any basis to conclude that he even attempted to initiate the dispute resolution procedures of Article 14, or that there is any documented 2/3 vote to authorize any decisions related to Donald Callender's claims in the present case or the counterclaims that Wade Callender advanced. Because the parties have not undergone Article 14's dispute resolution procedures and otherwise complied with the conditions set forth in the amended Section 1, the attorney's fees and costs section does not apply. The Court will therefore deny Wade Callender's Motion.

## II.     Donald Callender's Motion

In his Motion, Donald Callender seeks sanctions, including attorney's fees and costs, against Wade Callender and his counsel for "eighteen months of unnecessary litigation." Donald Callender Mot. at 5, ECF No. 143. Specifically, Donald Callender seeks sanctions for the period from March 18, 2020, when Wade Callender informed the Court that he intended to continue to pursue his breach of the partnership agreement counterclaim even after the Court granted summary judgment to Wade Callender on Donald Callender's claims, to August 19, 2021, when the parties stipulated to its dismissal, thus ending the litigation. Donald Callender seeks attorney's fees against Wade Callender's counsel pursuant to 28 U.S.C. § 1927, which provides that a court may require "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (2018). This provision is "unconcerned with

8

the merits of the lawsuit" and is instead focused on the "conduct of the litigation" and with "limiting the abuse of court processes." *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012) (citations omitted). Notably, the provision applies only when an attorney acts to "multiply" the proceedings, and a finding of "[b]ad faith on the part of the attorney is a precondition" to awarding attorney's fees under this provision. *Id.* There must also be "a causal link" between the wrongful conduct and the multiplication of proceedings, as well as a connection between the alleged costs incurred and the amount awarded. *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 520 (4th Cir. 2018).

Here, the Court does not find the required bad faith on the part of Wade Callender's attorney. Donald Callender argues that in March 2020, when Wade Callender informed the Court that he intended to continue pursue the breach of the partnership agreement counterclaim, Falkirk "was canceled in Virginia and in forfeiture status in . . . Maryland." Donald Callender Mot. at 10. As a result, he contends, Wade Callender could not continue with the counterclaim and demonstrated a "lack of candor" by failing to inform the Court of Falkirk's status. *Id.* at 12. However, Donald Callender's cited legal authorities address whether an entity such as Falkirk could pursue a legal action in light of its particular status at any given time, not whether Wade Callender, an individual, could pursue a legal claim relating in some way to the Partnership Agreement. *See* Donald Callender Mot. at 11-13; *see, e.g., Price v. Upper Chesapeake Health Ventures*, 995 A.2d 1054, 1062 (Md. Ct. Spec. App. 2010) (discussing whether an LLC whose rights have been forfeited in Maryland may prosecute actions in court). Where the question of whether Wade Callender could continue to pursue the counterclaim was far from settled and was to be the subject of a contested motion, Donald Callender has not shown any bad faith on the part of Wade Callender's attorney. *See Great Steaks, Inc.*, 667 F.3d at 522-23 (holding that a claim

that the plaintiff litigated the case "even though it lacked a foundation" did not fall within § 1927's purview because the statute is unconcerned with the weakness of the case and there was no showing of bad faith).

Moreover, there has been no showing of multiplication of proceedings. Indeed, in Wade Callender's Notice informing the Court that he intended to continue to pursue the counterclaim, he "request[ed] that the Court refer this matter to a magistrate for mediation before expending any additional attention o[r] resources," Notice, ECF No. 92, a mediation to which Donald Callender did not initially consent. Following the Notice, the parties engaged in discovery activities, but no dispositive motions or briefs were filed on the counterclaim, and it was ultimately resolved through a stipulation of dismissal. Although the parties subjected each other to years of protracted litigation that required the Court to resolve three separate dispositive motions in the present case alone, the Court finds that this final phase of litigation was not conducted in bad faith and did not so multiply the proceedings as to warrant attorney's fees under § 1927. The Court will deny the Motion as it relates to the request for attorney's fees and costs under § 1927.

Finally, Donald Callender also argues that sanctions including attorney's fees should be imposed under the Court's inherent authority. As part of its "inherent power to police itself," a court may impose sanctions in the form of "attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)). Inherent powers "must be exercised with restraint and discretion." *Id.* at 44. For the same reasons discussed above, the Court finds that Donald Callender has not shown that Wade Callender's continued pursuit of the breach of the partnership agreement counterclaim was in bad faith, vexatious, wanton, or oppressive. Rather, having presided over the two separate cases involving

or related to the present parties, the Court finds that both sides have contributed significantly to the protracted, bitter, and costly nature of the litigation. The Court will deny this part of Donald Callender's Motion as well.

## CONCLUSION

For the foregoing reasons, Wade Callender's Motion for Attorney's Fees and Costs will be DENIED, and Donald Callender's Cross Motion for Sanctions Including Attorney's Fees will be DENIED. A separate Order shall issue.

Date: July 20, 2022

THEODORE D. CHUANG
United States District Judge